UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00166-DCN |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| FABIAN TEXCAHUA-TLAXCALTECATL, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant Fabian Texcahua-Tlaxcaltecatl's Motion to Dismiss Indictment. Dkt. 34. The Government filed a Response opposing the Motion (Dkt. 40) and Defendant replied (Dkt. 43). The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1]

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies because there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

Fabian Texcahua-Tlaxcaltecatl is a Mexican national. He first entered the United States in August 2007, at the age of eighteen, and joined his family in Alabama. Just under two years later, while driving under the influence, Texcahua-Tlaxcaltecatl was involved in a serious car accident. His brother—a passenger in the car—was killed in the accident. Texcahua-Tlaxcaltecatl was arrested and pleaded guilty to criminally negligent homicide. Because of his age, Texcahua-Tlaxcaltecatl was granted youthful-offender status and was sentenced to three years of probation. Shortly thereafter, he was delivered into the custody of the Department of Homeland Security (the "DHS") for removal proceedings.

On July 29, 2010, an immigration officer served Texcahua-Tlaxcaltecatl with a Notice of Rights, informing him that he could: (1) request an immigration hearing, (2) request asylum, or (3) waive his right to a hearing and request immediate departure. Texcahua-Tlaxcaltecatl opted for an immigration hearing. Dkt. 34-3, at 1.

Texcahua-Tlaxcaltecatl alleges that, shortly before his hearing, another immigration officer told him and a group of other detainees that they were being deported and that they could either wait for an immigration hearing or sign paperwork to return to their home country immediately. Dkt. 34-1.

Texcahua-Tlaxcaltecatl chose to sign the "paperwork"—a Stipulated Request for Removal Order and Waiver of Hearing (the "Waiver"). Dkt. 34-8. His signing was witnessed by Immigration Judge Agnelis L. Reese and Assistant Chief Counsel Rebecca Hollaway, both of whom also signed the document. *Id.* Judge Reese's signature attested

MEMORANDUM DECISION AND ORDER – 2

that she found Texcahua-Tlaxcaltecatl's waiver to be voluntary, knowing, and intelligent. *Id.* Later that same day, Judge Reese ordered Texcahua-Tlaxcaltecatl's removal. Her order was carried out on September 16, 2010.

In June 2023, Border Patrol agents in Coeur D'Alene, Idaho confronted Texcahua-Tlaxcaltecatl at a construction site. Texcahua-Tlaxcaltecatl identified himself and admitted to being in the country illegally. He was subsequently charged with Deported Alien Found in the United States under 8 U.S.C. § 1326(a) and (b). He now collaterally attacks his underlying deportation proceedings under § 1326(d).

### III. LEGAL STANDARD

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a due process right to challenge the validity of the underlying deportation order because it is a predicate element of his conviction. *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). To succeed on a challenge under 8 U.S.C. § 1326, a defendant must show: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id.* (cleaned up).

Until recently, Ninth Circuit caselaw had "excused defendants from proving the first two requirements in certain cases." *United States v. Portillo-Gonzalez*, 80 F.4th 910, 916 (9th Cir. 2023). For example, the Ninth Circuit considered the first two prongs satisfied where the government failed "to inform the alien that he is eligible for a certain type of relief." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013); *see also*

MEMORANDUM DECISION AND ORDER – 3

*United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013) (stating "an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to appeal the removal and seek such relief") (cleaned up). In a similar vein, the Ninth Circuit regularly held that, where the government misinformed an alien that he or she was ineligible for relief, the requirements of showing exhaustion and denial of judicial review were satisfied. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262 (9th Cir. 2013); *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010).

However, in *United States v. Palomar-Santiago*, the Supreme Court found the Ninth Circuit's approach to § 1326(d) to be incompatible with the statute's text. 593 U.S. 321, 326 (2021). In *Palomar-Santiago*, the Supreme Court held that where "Congress uses mandatory language in an administrative exhaustion provision, a court may not excuse a failure to exhaust." *Id.* (cleaned up). It elaborated that "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies (by appealing . . .) or was deprived of the opportunity for judicial review (by filing a petition for review of a [Board of Immigration Appeals] decision with a Federal Court of Appeals)." Accordingly, to launch a successful collateral attack on an underlying removal order, one typically must show actual exhaustion of administrative remedies and actual denial of judicial review *in addition* to fundamental unfairness.

That said, despite the strong language of *Palomar-Santiago*, the Supreme Court has recognized that circumstances may exist "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016); *see also Portillo-Gonzalez*, 80 F.4th at 920. For example, an administrative

MEMORANDUM DECISION AND ORDER – 4

remedy is not truly "available" where it serves as merely a dead end, where it is so opaque that it becomes incapable of use, or where administrators, "through machination, misrepresentation, or intimidation," impede those who would otherwise take advantage of the procedure from doing so. *Ross*, 578 U.S. at 643–44.

## IV. ANALYSIS

The Court will begin with a discussion of the validity of the Waiver. It will then address whether Texcahua-Tlaxcaltecatl has established the three factors required for a successful collateral attack.

### A. Waiver Validity

The parties contest the validity of the Waiver. The Waiver's validity is relevant here because, if it was entered voluntarily, knowingly, and intelligently—as attested by Judge Reese—then Texcahua-Tlaxcaltecatl waived his administrative remedies and his right to judicial review, rendering him incapable of mounting a successful challenge to his underlying removal order. *See* Dkt. 34-8; *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) ("A valid waiver of the right to appeal must be both considered and intelligent.") (cleaned up); *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1147 (9th Cir. 2021) ("[A]n alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order.") (cleaned up).

"The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings." *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014) (cleaned up). Proof of validity must be "clear and convincing." *Id.* (cleaned up). Elaborating on this standard, the Ninth Circuit has emphasized that reviewing courts should

MEMORANDUM DECISION AND ORDER – 5

"indulge every reasonable presumption against waiver and should not presume acquiescence in the loss of fundamental rights." *Id.* at 894 (cleaned up). This approach is particularly important where the waiving party did not have the benefit of counsel at the time of waiver. *Id.*

The *Gomez* court elaborated that, "[w]hen a defendant . . . contests the validity of his waiver of the right to appeal his deportation order, we have held that the government's introduction of an official document signed by the defendant waiving his right to appeal is insufficient to meet the government's burden of proving a valid waiver." *Id.* at 895. It later stated that it could not "conclude that waiver of rights, including the right to appeal, was considered or intelligent without evidence that a detainee was able to understand the questions posed to him when put to the choice of foregoing all rights or remaining in detention until he could appear before an [Immigration Judge]." *Id.* at 896.

Here, in defense of the validity of the Waiver, the Government relies on the signed Waiver itself (Dkt. 34-8) and a Declaration of Rebecca Holloway detailing Judge Reese's practices in stipulated removals (Dkt. 40-2). Holloway signed Texcahua-Tlaxcaltecatl's Waiver in her capacity as Assistant District Counsel for the Bureau of Immigration and Customs Enforcement. In her Declaration, Holloway avers that she does not remember Texcahua-Tlaxcaltecatl's case specifically. *Id.* at 2. Nevertheless, she states that she "participated in hundreds, if not thousands of immigration hearings and dozens of stipulated removals before [Judge] Reese." *Id.*

According to Holloway, Judge Reese applied the same process in all stipulated removals. *Id.* Judge Reese would hold removal hearings in person, in the presence of

"Assistant District Counsel, court staff, a court-certified interpreter, and the respondent." *Id.* If an interpreter was not available, Judge Reese would employ telephonic interpretive services or would reschedule the hearing for a time when an interpreter who spoke the respondent's language was available. *Id.* at 2–3. To Holloway's recollection, Judge Reese never went forward with a removal hearing "without an interpreter if necessary." *Id.* at 3.

Regarding her own practices, Holloway asserts that she would never "sign a stipulated order of removal until the respondent was explained his rights in person and verified that he understood the proceedings, understood the interpreter, and understood he was waiving his right to appeal any decision in his case." *Id.* With respect to the respondent's understanding of the proceedings, Holloway contends she "would not have signed [the Waiver] unless the respondent indicated that he . . . was waiving his rights and opportunity to file for other applications of relief." *Id.*

In response to Holloway's Declaration, Texcahua-Tlaxcaltecatl introduces a Declaration of his own. Dkt. 43-1. Therein, he affirms that he did not speak with anyone fluent in Spanish at any point during his removal proceedings. *Id.* at 1. He maintains that the translation services described by Holloway were not employed in his case, and that, as a result, he did not fully understand "what was occurring, what [he] was signing, or [his] appeal rights." *Id.* Finally, he avers that other forms of relief, like voluntary departure, were not explained to him. *Id.* If true, all of these factors weigh against a conclusion that the Waiver was voluntary, knowing, or intelligent.

The conflicting declarations here make the validity of the Waiver a close question. Holloway's Declaration leaves little room for a finding that an alien in a proceeding in

MEMORANDUM DECISION AND ORDER – 7

which Holloway was present unknowingly or involuntarily waived his or her rights. And yet, Texcahua-Tlaxcaltecatl, who, unlike Holloway, claims to have specific memories from his proceedings, asserts that he did not receive the benefit of a translator. Dkt. 43-1, at 1. The Court is mindful of its obligation to resolve reasonable ambiguities in favor of Texcahua-Tlaxcaltecatl. *See Gomez*, 757 F.3d at 893. But it is also hesitant to saddle the Government with an unrealistic burden—if defending the validity of a waiver requires the Government to produce more than the document itself and an affidavit from a present party, it is hard to imagine that any waiver will be capable of withstanding a challenge.

In any event, the Court finds that its determination regarding the validity of the Waiver will ultimately have no impact on the outcome of Texcahua-Tlaxcaltecatl's Motion. As already explained, if the Court determines the Waiver to be valid, then Texcahua-Tlaxcaltecatl has not exhausted his administrative remedies nor been deprived of judicial review, and his Motion must be denied. On the other hand, for reasons explained more fully below, if the Court determines the Waiver to be invalid, the Motion will still ultimately fail. Accordingly, the Court assumes, without deciding, that the Waiver is invalid, and conducts the remainder of its analysis under that assumption.

### B. Exhaustion of Administrative Remedies and Judicial Review

"An alien exhausts administrative remedies by appealing to the Board of Immigration Appeals ('BIA')." *United States v. Davila-Chavez*, 2022 WL 4292965, at *6 (N.D. Cal. Sept. 16, 2022) (*citing Palomar-Santiago*, 593 U.S. at 327). If the alien is unhappy with the BIA's decision, he or she may file a petition for review of the decision by a Federal Court of Appeals. *Palomar-Santiago*, 593 at 327. Here, there is no dispute

that Texcahua-Tlaxcaltecatl did not take either of these steps. Instead, he rests his exhaustion and judicial-review arguments on the language from *Ross* and *Portillo-Gonzalez*, stating that, where an individual is misled "as to the existence or rules of [administrative remedies]," those remedies were not available to him or her.[2] *Portillo-Gonzalez*, 80 F.4th at 920 (quoting *Ross*, 578 U.S. at 644, n.3).

The Court assumes that the Waiver is invalid because it was not properly translated for Texcahua-Tlaxcaltecatl. Paragraph eight of the Waiver informed Texcahua-Tlaxcaltecatl that, "by accepting an order of removal, [he gave] up [his] right to apply for any relief for which [he] might be eligible." Dkt. 34-8, at 1. If the Waiver is invalid, then this paragraph constitutes a misrepresentation that impeded Texcahua-Tlaxcaltecatl from taking advantage of his administrative rights. *See Ross*, 578 U.S. at 643–44. Accordingly, Texcahua-Tlaxcaltecatl's administrative and judicial remedies were "not capable of use to obtain relief," and his failure to exercise those remedies will not, alone, doom his collateral attack. *Id.* at 643.

In making this finding, the Court is wary of reopening the door that was closed in *Palomar-Santiago* and *Portillo-Gonzalez*.[3] But it finds that the facts here are distinguishable from those in both *Palomar-Santiago* and *Portillo-Gonzalez*. In *Portillo-Gonzalez*, the record showed that the Immigration Judge "correctly informed Portillo-

---

[2] The Court notes that 8 U.S.C. § 1326(d)(1) requires aliens to exhaust only those remedies "that may have been available" to them.

[3] The Court notes that the full effect of the *Palomar-Santiago* ruling is not yet clear. *See United States v. May-Delgado*, 2023 WL 2801174, at *3 (E.D. Wash. Apr. 5, 2023) ("District courts in the Ninth Circuit have come to different conclusions regarding *Palomar-Santiago*'s effect on cases where a defendant bases a collateral attack on grounds different from those in *Palomar-Santiago*.").

MEMORANDUM DECISION AND ORDER – 9

Gonzalez of his right to appeal and that in response to the [Immigration Judge] asking him whether he would like to appeal the order of removal, Portillo-Gonzalez said 'no.'" 80 F.4th at 920. There is no indication that Texcahua-Tlaxcaltecatl received any similar opportunity. Further, in *Portillo-Gonzalez*, the Ninth Circuit concluded that administrative review, *about which Portillo-Gonzalez had been properly informed*, would have corrected the very error he later complained about. *Id.* at 918. Here, Texcahua-Tlaxcaltecatl was misinformed that his remedies had been waived. Thus, he can not reasonably be expected to have exercised those remedies.

In *Palomar-Santiago*, the defendant was initially removed from the United States for committing an aggravated felony. 593 U.S. at 325. However, several years later, the Supreme Court reinterpreted the law governing Palomar-Santiago's conviction in a manner that downgraded the crime, meaning the crime never should have served as the basis for removal. *Id.* When Palomar-Santiago was subsequently found in the United States and charged with unlawful reentry, he levied a collateral attack on his underlying indictment. *Id.* at 326. The district court dismissed his indictment, and the Ninth Circuit affirmed, both holding that defendants were "excused from proving [exhaustion and deprivation of judicial review] if they were not convicted of an offense that made them removable." *Portillo-Gonzalez*, 80 F.4th at 916–17 (discussing *Palomar-Santiago*). As noted, the Supreme Court overruled the Ninth Circuit, stating that it was inappropriate to excuse factors that Congress had clearly made mandatory. *Palomar-Santiago*, 593 U.S. at 326. It elaborated that an error from an immigration judge "does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative

MEMORANDUM DECISION AND ORDER – 10

review, and then judicial review if necessary, could fix that very error." *Id.* at 328. Here, again, Texcahua-Tlaxcaltecatl was misinformed that he had waived his rights to "apply for any relief for which [he] might be eligible." Dkt. 34-8, at 1. Thus, "further administrative review, and then judicial review, if necessary," were unavailable to him, meaning *Palomar-Santiago* does not foreclose his attack. *Palomar-Santiago*, 593 U.S. at 328.

Though subtle, the distinctions between *Palomar-Santiago*, *Portillo-Gonzalez*, and the facts here are significant enough for the Court to find that Texcahua-Tlaxcaltecatl has satisfied the administrative and judicial review prongs of the Section 1326 analysis.

### C. Fundamental Unfairness

The Court moves next to Texcahua-Tlaxcaltecatl's contention that his Waiver was fundamentally unfair.

An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Melendez-Castro*, 671 F.3d at 953. Establishing prejudice under the second prong requires a defendant to show it was "plausible, rather than merely conceivable or possible, that an [immigration judge] would have granted the relief for which he was apparently eligible [i.e., voluntary departure]." *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015). This plausibility analysis requires the Court to weigh the factors favoring an individual's continued presence in the United States against factors disfavoring such presence. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264–65 (9th Cir. 2013). Favorable factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* at 1265. Negative factors

MEMORANDUM DECISION AND ORDER – 11

include "the nature and underlying circumstances of the deportation ground at issue; additional violations of immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (cleaned up). In weighing positive equities against negative equities, courts "focus on whether aliens with similar circumstances received relief." *Id.* at 1263.

### 1. Violation of Due-Process Rights

Here, the Court assumes Texcahua-Tlaxcaltecatl's due process rights were violated when he was induced to sign the Waiver without first receiving a proper translation thereof. Accordingly, the Court analyzes the factors weighing for and against his continued residency at the time of his removal. *See Rojas-Pedroza*, 716 F.3d at 1264–65.

### 2. Prejudice

The factors favoring Texcahua-Tlaxcaltecatl's presence in the United States are scant. He had been living in the United States for only two years when he was initially arrested. Dkt. 34-2, at 2. Texcahua-Tlaxcaltecatl had family living in the United States at the time of his arrest, but the Ninth Circuit requires that, for such connections to support a finding of prejudice, the family members themselves must be citizens or lawful permanent residents. *See United States v. Gonzalez-Flores*, 804 F.3d 920, 928 (9th Cir. 2015). Texcahua-Tlaxcaltecatl has not shown as much here. Nor has he established that any humanitarian considerations favor his remaining in the country.

On the negative side, Texcahua-Tlaxcaltecatl was convicted of Criminally Negligent Homicide for his involvement in an accident in which he was driving under the

MEMORANDUM DECISION AND ORDER – 12

influence, and which resulted in the death of his brother. Immigration courts have not looked kindly upon driving under the influence, especially when it results in injury or death. *See In re Romero-Reyes*, 2010 WL 3780635, at *1–2 (DCBABR Sept. 9, 2010) (stating that "driving under the influence is a very dangerous crime," and denying an appeal of an Immigration Judge's finding that, despite living in the country for twenty years, the defendant was not a plausible candidate for voluntary departure because of his criminal history); *In re Gabriel Ortiz-Bustos*, 2014 WL 1652408, at *1–2 (DCBABR Apr. 10, 2014) (affirming an Immigration Judge's denial of voluntary departure where defendant's criminal record included two convictions for driving while intoxicated); *In re Tadeusz Drag*, 2008 WL 655776, at *1–2 (DCBABR Feb. 6, 2008) (finding that the positive equities of twenty years of residence, steady employment, and loss of Social Security and Medicare benefits were outweighed by a conviction for reckless homicide stemming from a death caused by the defendant's driving under the influence).

Courts have regularly upheld the denial of voluntary departure to individuals with greater positive equities and similar or lesser criminal histories than Texcahua-Tlaxcaltecatl. For example, in *In re Ponce-Velez*, the Board of Immigration Appeals (the "Board") affirmed an Immigration Judge's denial of voluntary departure where the appellant had lived in the United States for thirteen years, had three children who were citizens, and volunteered for a religious organization. 2011 WL 1570481, at *1–2 (DCBABR Mar. 31, 2011). In so holding, the Board determined the appellant's arrest for driving while intoxicated and without a license and his failure to appear in court outweighed his positive equities. *Id.* In *United States v. Medina*, the Ninth Circuit found

that an individual who had lived in the United States for three years presented only "minimal" positive equities, and that those equities were outweighed by that individual's DUI and grand theft convictions. 2023 WL 1960649, at *1–2 (9th Cir. Feb 13, 2023). Finally, in *In re Martinez-Hernandez*, the Board affirmed an Immigration Judge's denial of voluntary departure to a man who, despite a minimal criminal history, had not shown substantial positive equities. 2011 WL 4446883, at *1 (DCBABR Sept. 6, 2011).

Casting further doubt on the sufficiency of Texcahua-Tlaxcaltecatl's showing, the Court notes that instances where courts have found prejudice are readily distinguishable from the facts at hand. For instance, in *In re Sanabria-Dominguez*, the Board reversed an Immigration Judge and found that voluntary departure was plausible despite the alien's significant criminal history. 2010 WL 2601495, at *1–2 (DCBABR May 25, 2010). However, there the alien in question had lived in the United States for a substantial period, was caring for his wife—a United States citizen, had a son who was also a citizen, worked as a drug counselor, and served in his church. *Id.* Texcahua-Tlaxcaltecatl has identified no similar positive equities. *United States v. Alcazar-Bustos* is similarly instructive. 382 Fed. App'x 568 (9th Cir. 2010). There, the Ninth Circuit found that a defendant had established prejudice despite his three juvenile adjudications and two convictions for firearm possession. *Id.* at 569. In so holding, it relied on the fact that the defendant had spent nearly his entire life in the United States and had close family members who were citizens. *Id.* at 570. As already discussed, Texcahua-Tlaxcaltecatl spent only a short period in the United States and he has not shown that he has any family members who are citizens.

MEMORANDUM DECISION AND ORDER – 14

Texcahua-Tlaxcaltecatl spends much of his Reply brief attempting to minimize the negative impact of his conviction. *See* Dkt. 43 at 6–8. He asserts flatly that "without the conviction on his record, [he] would have not just been a plausible candidate for departure but a likely one." *Id.* at 6–7. This is simply inaccurate. As discussed above, a mere showing that one lacks negative equities is not enough to establish prejudice. *See Martinez-Hernandez*, 2011 WL 4446883, at *1. Here, even if the Court were to ignore Texcahua-Tlaxcaltecatl's conviction, he has not shown sufficient positive equities to establish prejudice. He lived in the United States only a short time before he was removed. He has not indicated that he has any lawfully present family members in the country. He has no obligations to a spouse or children. Accordingly, the Court determines that Texcahua-Tlaxcaltecatl has failed to show he was a plausible candidate for relief. Therefore, he was not prejudiced by the violation of his due process rights.

## V. CONCLUSION

A successful collateral attack of a removal order requires a defendant to show that he or she exhausted the administrative and judicial remedies available to him or her. *See* 8 U.S.C. § 1326(d)(1)–(2). Assuming Texcahua-Tlaxcaltecatl was misled as to the availability and workings of administrative and judicial remedies, the Court finds that those remedies were not available to him and that he has satisfied the requirements that he exhaust administrative remedies and show deprivation of judicial review. However, Texcahua-Tlaxcaltecatl has not shown that his initial removal was fundamentally unfair. Accordingly, the Court DENIES his Motion to Dismiss Indictment.

## VI. ORDER

1. Texcahua-Tlaxcaltecatl's Motion to Dismiss Indictment (Dkt. 34) is **DENIED**.

DATED: May 7, 2024

_____
David C. Nye
Chief U.S. District Court Judge